**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| MARIA JARA, individually and on behalf of a class of similarly situated individuals, | ) ) ) |
| | ) No. 19-cv-04532 |
| Plaintiff, | ) ) |
| v. | ) Hon. Virginia M. Kendall |
| | ) |
| REDBOX AUTOMATED RETAIL, LLC, a Delaware limited liability company, | ) Magistrate Judge Jeffrey Cummings ) |
| | ) |
| Defendant. | ) |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Maria Jara ("Plaintiff") brings this amended class action complaint against Defendant Redbox Automated Retail, LLC ("Defendant") to stop Defendant's practice of making unsolicited text message calls to cellular telephones, and to obtain redress for all persons injured by its conduct. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

1.     In an effort to promote its business, Defendant, a provider of video rental services, engaged in an invasive and unlawful form of marketing: the transmission of unauthorized advertisements in the form of "text message" calls to the cellular telephones of consumers throughout the nation.

2.     By effectuating these unauthorized text message calls (hereinafter, "wireless spam" or "SMS Messages"), Defendant has violated consumers' statutory and privacy rights and has caused consumers actual harm, not only because consumers were subjected to the aggravation and

invasion of privacy that necessarily accompanies wireless spam, but also because consumers have to pay their cell phone service providers for the receipt of such wireless spam.

3. In order to redress these injuries, Plaintiff, on behalf of herself and a nationwide class of similarly situated individuals, brings this suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), which prohibits unsolicited text message calls to cellular phones.

4. On behalf of the class, Plaintiff seeks an injunction requiring Defendant to cease all wireless spam activities, and an award of actual or statutory damages to the class members, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

5. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227.

6. Venue is proper in this District pursuant to 28 U.S.C. 1391(b) because Defendant resides in this District; Defendant regularly conducts business in this District; and because a substantial part of the events concerning the conduct at issue occurred in this District, as the text messages at issue were transmitted from this District.

## PARTIES

7. Plaintiff is a resident of Georgia.

8. Defendant is the operator of a national DVD, Blu-ray, and video game rental service. Defendant is a Delaware limited liability company that is registered to do business in this District and which maintains its corporate headquarters in Oakbrook Terrace, Illinois.

## COMMON ALLEGATIONS OF FACT

9. In recent years, marketers who have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

10. One of the newer types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

11. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

12. Unlike more conventional advertisements, SMS messages, and particularly wireless spam, invade privacy and can actually cost their recipients money, because cell phone users like Plaintiff have to pay their respective wireless service providers for each text message call they receive, incur a usage allocation deduction from the total number of text messages allowed under their cell phone plan, or pay a fixed or variable usage fee.

13. Defendant recently undertook a misguided effort to promote its video rental services by transmitting such text message advertisements to consumers across the country. Indeed, during the applicable statutory period, Defendant and its agents caused the mass transmission of wireless spam to the cell phones of individuals who it hoped were potential customers of Defendant's business.

14. However Defendant failed to implement proper procedures to confirm that the telephone numbers to which Defendant sent the automated text message advertisements actually

belonged to the persons who supposedly provided them and/or consented to receive such messages.

15. For instance, on November 28, 2018, Plaintiff's cell phone rang, indicating that a text had been received. The "from" field of the transmissions was identified cryptically as "727272," which is an abbreviated telephone number known as an SMS short code operated by Defendant or by Defendant's agents acting on Defendant's behalf. The text message Plaintiff received is depicted below:



16. On January 10, 2019, Plaintiff's cell phone rang again, indicating that a text had been received. The "from" field of the transmissions was identified cryptically as "727272," which is an abbreviated telephone number known as an SMS short code operated by Defendant or by Defendant's agents acting on Defendant's behalf. The text message Plaintiff received is depicted below:

4



17. On June 26, 2019, Plaintiff's cell phone rang yet again, indicating that a text had been received. The "from" field of the transmissions was identified cryptically as "727272," which is an abbreviated telephone number known as an SMS short code operated by Defendant or by Defendant's agents acting on Defendant's behalf. The text message Plaintiff received is depicted below:



18. The generic spam text messages reproduced in paragraphs 15–17 above each contained hyperlinks to website addresses that were owned and operated by Defendant and that encouraged recipients of the text messages to enroll in Defendant's services and utilize promo codes at Defendant's video rental kiosks.

19. Defendant's use of an SMS short code enabled Defendant's mass transmission of wireless spam to a list of cellular telephone numbers.

20. All telephone contact by Defendant or affiliates, subsidiaries, or agents of Defendant to the Plaintiff's cellular telephone number and to the numbers assigned to members of the putative Class occurred via an "automated telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).

21. Specifically, Defendant utilized an "automated telephone dialing system" to transmit the aforementioned text messages to the Plaintiff's number and to the numbers assigned to members of the putative Class because such messages were sent from a short-code telephone number used to message consumers *en masse* and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion and without human intervention. And indeed, Defendant actually transmitted the text messages at issue in this case to Plaintiff and all other proposed class members in an automated fashion and without human intervention, with hardware and software that stored, produced and dialed random or sequential numbers and/or received and stored lists of telephone numbers and which then dialed such numbers automatically.

22. All of the complained-of text messages sent by Defendant to Plaintiff's cellular telephone number and to the numbers assigned to members of the putative Class defined below

constituted "telemarketing" as defined by 47 C.F.R. § 64.1200(f)(12) & *id.* § 64.1200(a)(2), and "advertisements" as defined by 47 C.F.R. § 64.1200(f)(1), & *id.* § 64.1200(a)(2). This is because Defendant sent its text messages to Plaintiff and the unnamed Class members to market and advertise the commercial availability of its goods and services, for the purpose of selling such goods and services to Plaintiff and the other members of the proposed Class for profit.

23. At no time did Plaintiff expressly consent in writing to receive autodialed text message advertisements sent by Defendant to Plaintiff's cellular telephone number.

## CLASS ALLEGATIONS

24. Plaintiff brings this action on behalf of herself, and a class of similarly situated individuals, defined as follows: All persons in the United States and its Territories to whom Defendant delivered one or more text messages promoting its goods or services without having obtained such persons' prior express written consent to be sent such messages, at any time during the four years preceding the filing of this action through the date on which any order is entered certifying this action as a class action.

25. There are thousands of members of the Class such that joinder of all members is impracticable.

26. Common questions of law and fact exist as to all members of the Class, and such questions predominate over questions affecting Plaintiff or individual members of the Class. Common questions for the Class include, but are not limited, to the following:

    (a)    whether Defendant and/or its agents sent one or more text message advertisements to members of the Class;

    (b)    whether Defendant and/or its agents used an automatic telephone dialing system to transmit the text message advertisements at issue;

(c) whether Defendant can satisfy its burden to prove that it obtained the requisite prior express written consent of the persons to whom it delivered the text message advertisements at issue prior to transmitting such messages, assuming any such consent-based affirmative defense is raised;

(d) whether the wireless spam distributed by Defendant violated the TCPA;

(f) whether Defendant's violations of the TCPA were committed willfully or knowingly, such that Plaintiff's and the Class's award of statutory damages should be trebled; and

(g) whether Defendant should be enjoined from engaging in the complained-of conduct in the future.

27. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

28. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

29. Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class in distributing the wireless spam at issue, requiring

the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

30. The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class as a result of Defendant's unlawful distribution of the wireless spam alleged herein.

## COUNT I
### Violation of the Telephone Consumer Protection Act (47 U.S.C. § 227, et seq.) on behalf of Plaintiff and the Class

31. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

32. Defendant made numerous unsolicited commercial text calls to the wireless telephone numbers of Plaintiff and the other members of the Class using equipment that constituted an "automatic telephone dialing system" within the meaning of the TCPA, 47 U.S.C. § 227(b)(1)(A), as alleged above.

33. These text message calls were made *en masse* through the use of a short code without the prior express written consent of Plaintiff.

34. Defendant has, therefore, violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

35. As a result of Defendant's illegal conduct, the members of the Class have had their privacy rights violated, have suffered statutory and actual damages, and under section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

36. To the extent Defendant knew or should have known that the Class members did not provide prior express written consent to be sent the wireless spam at issue, the Court should,

9

pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and members of the Class.

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1. An order certifying the Class as defined above;

2. An award of statutory damages;

3. An injunction requiring Defendant to cease all wireless spam activities;

4. An award of reasonable attorneys' fees and costs; and

5. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: September 17, 2019

Respectfully submitted,

MARIA JARA, individually and on behalf of a class of similarly situated individuals

By: /s/ Eugene Y. Turin
     One of Her Attorneys

Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*