UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA JARA, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>    v.<br><br>REDBOX AUTOMATED RETAIL, LLC,<br><br>  Defendant. | Judge Hon. Virginia M. Kendall<br>Magistrate Judge Hon. Jeffrey Cummings<br><br>No. 1:19-cv-04532 |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

    Plaintiff Maria Jara ("Plaintiff" or "Jara") alleges in her Amended Complaint that Defendant Redbox Automated Retail, LLC ("Redbox" or "Defendant") violated the Telephone Consumer Protection Act ("TCPA") by sending unsolicited text messages to her telephone without confirming that she actually provided her telephone number to Redbox. In other words, Plaintiff asserts that she received text messages from Redbox because somebody else (presumably the prior subscriber) provided Redbox with her phone number. But in so alleging, Plaintiff pleads herself out of a viable TCPA claim. In short, to state a claim under the TCPA, Plaintiff must plausibly allege that she received unsolicited text messages from Defendant that were sent using an automatic telephone dialing system ("ATDS") (which is statutorily defined as "a random or sequential number generator"). However, Plaintiff has done no such thing; to the contrary, Plaintiff's allegations defeat any plausible suggestion that the texts she purportedly received were sent using an ATDS. Plaintiff's Amended Complaint should therefore be dismissed.

**Factual Background**

This litigation was initiated by a complaint filed by Shawand Ebanks against Redbox in the Circuit Court of Cook County, which Redbox removed to this Court on July 3, 2019. Dkt. 1. Plaintiff Ebanks alleged that Defendant violated the TCPA by sending her unsolicited text messages without her consent. *See* Dkt. 1-1, pp. 7-8 of 32. On September 17, 2019, an Amended Complaint was filed, abandoning Plaintiff Ebanks and substituting a new plaintiff – Maria Jara. Dkt. 17. Ms. Jara's Amended Complaint suggests that she received unsolicited text messages from Defendant as the result of her number being provided to Redbox by someone else. The Amended Complaint also conclusorily alleges that those text messages were sent using an ATDS. Specifically, the Amended Complaint alleges as follows:

- " . . . Defendant and its agents caused the mass transmission of wireless spam to the cell phones of individuals who it hoped were potential customers of Defendant's business. However *Defendant failed to implement proper procedures to confirm that the telephone numbers to which Defendant sent the automated text message advertisements actually belonged to the persons who supposedly provided them and/or consented to receive such messages*." Am. Compl., ¶¶ 13-14 (emphasis added).

- Plaintiff received a text message offering "new users" a discount when they logged in to their Redbox account, and a later text offered a free rental if the recipient "c[a]me back" to Redbox. *Id*., ¶¶ 15-16.

- "Defendant utilized an 'automated telephone dialing system' to transmit the aforementioned text messages to the Plaintiff's number and to the numbers assigned to members of the putative Class because such messages were sent from a short-code telephone number used to message consumers *en masse* and *because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, or receive and store lists of telephone numbers, and to dial such numbers, en masse, in an automated fashion and without human intervention*." *Id*., ¶ 21 (emphasis added).

As set forth below, Plaintiff's Amended Complaint fails to plausibly allege that the text messages Plaintiff claims to have received were sent using a random or sequential number generator, as required by the TCPA. Accordingly, the Amended Complaint should be dismissed.

### **Legal Standard**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556. The *Twombly/Iqbal* "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678. The plausibility standard means that "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together.*"* *Catinella v. Cty. of Cook*, 881 F.3d 514, 517 (7th Cir. 2018) (citation omitted).

The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Thus, for a complaint to survive a motion to dismiss, the non-conclusory factual content and reasonable inferences from that content must be plausibly suggestive of a claim entitling the plaintiff to relief. *Id.*

In the TCPA context, to state a cause of action for the receipt of unsolicited text messages, a plaintiff must plausibly allege, at minimum, that (1) a text was sent without prior express consent; (2) the sender of the text used an ATDS; and (3) the telephone number that was texted was assigned to a cellular telephone service. *See* 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a)(1). If a plaintiff's complaint does not give rise to the reasonable inference than an

3

ATDS was used, it must be dismissed. *See Martin v. Kovalcin*, No. SACV 16-0406 AG (DFMx), 2016 U.S. Dist. LEXIS 195289, at *3 (C.D. Cal. June 20, 2016).

### Argument

Plaintiff alleges that Defendant sent her text messages in violation of the TCPA. As part of her claim, she alleges that Defendant sent the texts at issue using "hardware and software" that "have the capacity to store, produce, and dial random or sequential numbers, or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion and without human intervention" (Am. Compl., ¶ 21), in an attempt to satisfy the TCPA's requirement that unsolicited communications be sent using an ATDS. But this allegation, in addition to being conclusory, misstates the legal definition of an ATDS. Moreover, even if Plaintiff pled the appropriate legal standard, her factual allegations belie her contention that an ATDS was used to contact her. Accordingly, Plaintiff's Amended Complaint should be dismissed.

### I. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE THAT AN ATDS WAS USED TO SEND THE TEXT MESSAGES SHE ALLEGEDLY RECEIVED.

For Plaintiff to state a claim for a violation of the TCPA, she must allege, *inter alia*, that Defendant used an ATDS to transmit the text messages she allegedly received. *See Martin,* 2016 U.S. Dist. LEXIS 195289, at *2-3. In other jurisdictions, what exactly comprises an ATDS is something of an open question. But numerous courts in this District have concluded that dialing equipment must meet the statutory definition of an ATDS for a TCPA claim to be actionable. Plaintiff's Amended Complaint does not plausibly allege that Defendant sent texts to her using technology that meets this definition.

The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Subsequent to the enactment of the TCPA, the FCC used its rulemaking authority to attempt to broaden the reach of that definition. For

4

example, in 2003, the FCC concluded that a predictive dialer—a device that dials from a "given set of numbers," and not randomly or sequentially—comprises an ATDS under the TCPA because it has the "basic function" that the FCC believed was necessary to qualify as an ATDS: "the capacity to dial numbers without human intervention." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 2003 FCC LEXIS 3673, at *208-211 (July 3, 2003) ("2003 Order"). The FCC reaffirmed that expansive definition in subsequent orders, declaring that notwithstanding the plain language of the statute, a device could be an ATDS "regardless of whether the numbers are randomly or sequentially generated." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 15391, 2012 FCC LEXIS 4874, at *3 n.5 (Nov. 29, 2012) ("2012 Order"); *see also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 2008 FCC LEXIS 56, at *20-21 (Jan. 4, 2008) ("2008 Order"); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 2015 FCC LEXIS 1586, at *22-24 (July 10, 2015) ("2015 Order").

The FCC's sweeping definition of an ATDS "generated substantial questions over the years," and in 2018, the D.C. Circuit vacated that definition in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018), holding that it was an "unreasonably expansive interpretation of the statute." 885 F.3d at 692, 701. As a result of *ACA International*, the FCC's Orders no longer have any bearing on whether a system qualifies as an ATDS. *Id.*, at 692. Instead, as courts in this District have held, the plain text of the TCPA governs; specifically, to be an ATDS that is subject to the TCPA's restrictions, the system at issue must have the "capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator." 47 U.S.C. § 227(a)(1); *see also Gadelhak v. AT&T Servs.*, No. 17-cv-01559, 2019 U.S. Dist. LEXIS 55200, at *20 (N.D. Ill. Mar. 29, 2019) (" . . . there is no genuine dispute that [defendant's] system cannot *generate* telephone numbers randomly or sequentially—as those terms are used in the

TCPA—and thus it is not an ATDS and is not prohibited.") (emphasis in original); *Folkerts v. Seterus*, No. 17 C 4171, 2019 U.S. Dist. LEXIS 42347, at *17 (N.D. Ill. Mar. 25, 2019) (*ACA International* and subsequent case law establish that "(1) to be an [ATDS], the equipment at issue must have the present, as opposed to merely the potential, capacity to function as an autodialer . . . and (2) equipment that merely has the ability to dial numbers from a stored list, as opposed to producing numbers using a random or sequential number generator, does not qualify as an ATDS . . .") (citations omitted); *Johnson v. Yahoo!, Inc.*, 346 F. Supp. 3d 1159, 1161 (N.D. Ill. 2018) (agreeing with "those courts that have concluded that the FCC's prior orders are no longer binding.").

Accordingly, for Plaintiff to state a TCPA claim, she must plausibly allege that the text messages she purportedly received were sent using a device with the "capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator." *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 939 (N.D. Ill. 2018) (granting defendant's motion for judgment on the pleadings where plaintiff did not "plausibly allege that he was called with a device that has the capacity to store or produce numbers that have been randomly or sequentially generated."); *see also Snow v. GE*, No. 5:18-CV-511, 2019 U.S. Dist. LEXIS 99760, at *11 (E.D.N.C. June 14, 2019) (dismissing TCPA claim where plaintiff failed to allege facts "permitting an inference that the text messages plaintiff received were sent using equipment that stores or produces numbers to be called 'using a *random* or *sequential number* generator.'") (citations omitted) (emphasis in original). But Plaintiff has not done so. Notwithstanding her failure to allege facts to support this necessary element of her claim, she fails to even conclusorily allege that technology meeting this criterion was used to contact her. Instead, Plaintiff alleges that Defendant sent text messages to her using a device that "ha[s] the capacity to store, produce, and dial random or sequential numbers, *or receive and store lists of telephone numbers,* and to dial such numbers, *en masse*, in an automated fashion and without human

6

intervention." Am. Compl., ¶ 21 (emphasis added). This allegation—incorporating the disjunctive phrase "or receive and store lists of telephone numbers"—is based on defunct FCC rules, misstates the appropriate legal standard, and suggests that the equipment allegedly used to send texts to Plaintiff does not meet the applicable definition of an ATDS. Under these circumstances, Plaintiff has failed to state a claim under Rule 8. *See Brooks v. Ross*, 578 F.3d 574, 581-2 (7th Cir. 2009) ("The behavior [plaintiff] has alleged that the defendants engaged in is just as consistent with lawful conduct as it is with wrongdoing. Without more, [plaintiff's] allegations are too vague to provide notice to defendants of the contours of his . . . claim.").

## II. THE ALLEGATIONS OF THE AMENDED COMPLAINT DEMONSTRATE THAT AN ATDS WAS NOT USED TO TEXT PLAINTIFF.

Even if Plaintiff's conclusory allegations of ATDS use articulated the applicable legal standard, the text messages that Plaintiff includes in her Amended Complaint dispel any suggestion that those messages were sent as the result of random or sequential number generation. As the Amended Complaint shows, the text messages at issue were plainly intended for a Redbox user. For example, the first text message Plaintiff allegedly received offered a discount to "new users" when they logged in (Am. Compl., ¶ 15), and a later text offered a discount to incentivize recipients to "come back" to Redbox (*id.*, ¶¶ 16-17), indicating that the texts were targeted to Redbox members, rather than sent as a result of random or sequential number generation. Put simply, Plaintiff's allegations demonstrate that the texts she purportedly received were intentionally sent to her phone number due to another person signing up for Redbox using that number, defeating any claim that the texts were sent using a random or sequential number generator.

In analogous circumstances, the Eastern District of North Carolina reached this very conclusion—*i.e.,* that when a plaintiff receives a message, in error, that is clearly targeted toward another recipient, it cannot be reasonably inferred that the message was sent using a random or

sequential number generator. *Snow*, 2019 U.S. Dist. LEXIS 99760. In dismissing the plaintiff's complaint, the court observed as follows:

> Critically missing from the complaint are any facts permitting an inference that the text messages plaintiff received were sent using equipment that stores or produces numbers to be called "using a random or sequential number generator." . . . Indeed, the facts alleged suggest the opposite. Plaintiff alleges that the text messages did not reach her randomly, but rather reached her because she was assigned a telephone number previously assigned to an individual who received technical alerts as part of a job function . . . Because plaintiff alleges that the text messages she received were intended for the prior owner or holder of her reassigned number, a targeted recipient, and because of the alleged content of the messages, it is not reasonable to infer that the messages were sent with equipment "using a random or sequential number generator."

*Id*., at \*11-13 (citations omitted).

Because Plaintiff's factual allegations contradict her conclusory assertions concerning use of an ATDS, she has failed to plausibly allege that an ATDS was used to contact her, and her TCPA claim should therefore be dismissed. *See Hill v. Tribune Co.*, No. 05 C 2602, *et al.*, 2006 U.S. Dist. LEXIS 71244, at \*55 (N.D. Ill. Sept. 26, 2009) ("plaintiffs may plead themselves out of court by providing specific allegations that are inconsistent with conclusory allegations.").

### III.  DISMISSAL SHOULD BE WITH PREJUDICE.

Plaintiff Jara's Amended Complaint is the second attempt to bring putative class claims against Defendant in this Court. The initial plaintiff, Ms. Ebanks, was abandoned and replaced by Ms. Jara, and the operative complaint was amended to address the facts specific to Ms. Jara's claim, and more importantly, to insert allegations concerning Defendant's use of an ATDS. Specifically, the following allegations in the Amended Complaint are absent from the original Complaint:

> 20. All telephone contact by Defendant or affiliates, subsidiaries, or agents of Defendant to the Plaintiff's cellular telephone number and to the numbers assigned to members of the putative Class occurred via an "automated telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).
>
> 21. Specifically, Defendant utilized an "automated telephone dialing system" to transmit the aforementioned text messages to the Plaintiff's number and to the numbers assigned to members of the putative Class because such messages

8

> were sent from a short-code telephone number used to message consumers en masse and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion and without human intervention. And indeed, Defendant actually transmitted the text messages at issue in this case to Plaintiff and all other proposed class members in an automated fashion and without human intervention, with hardware and software that stored, produced and dialed random or sequential numbers and/or received and stored lists of telephone numbers and which then dialed such numbers automatically.

Am. Compl., ¶¶ 20-21.

This addition to the Amended Complaint is significant, because it shows that Plaintiff recognized a deficiency in the original Complaint with respect to the ATDS component of her TCPA claim and attempted to bolster those allegations as best she could. But, in addition to misstating the law, the additional allegations are devoid of supporting facts. The fact that Plaintiff Jara could not improve upon the original Complaint by alleging facts plausibly suggesting that Defendant utilized an ATDS to make the communications at issue demonstrates that Plaintiff cannot cure the deficiencies in the Amended Complaint by yet another amendment. Indeed, any further amendments Plaintiff could make in this regard would contradict the allegations in the Amended Complaint. The Amended Complaint should therefore be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Amended Complaint be dismissed with prejudice.

Dated: October 1, 2019

Respectfully submitted,

By: */s/ Martin W. Jaszczuk*
Martin W. Jaszczuk
Margaret M. Schuchardt
Tamra Miller
JASZCZUK P.C.
311 South Wacker Drive, Suite 3200
Chicago, IL 60606
Telephone: (312) 442-0509
Facsimile: (312) 442-0519
mjaszczuk@jaszczuk.com

**CERTIFICATE OF SERVICE**

I, Margaret M. Schuchardt, an attorney, certify that I caused the foregoing document to be served upon the following, via the CM/ECF system, on October 1, 2019:

Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
eturin@mcgpc.com

Frank S. Hedin
HEDIN HALL, LLP
1395 Brickell Ave., Suite 900
Miami, FL 33131
Tel: (305) 357-2107
fhedin@hedinhall.com

    /s/ Margaret M. Schuchardt