**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARIA JARA, individually and on behalf of similarly situated individuals, ) ) ) *Plaintiff*, ) ) v. ) ) REDBOX AUTOMATED RETAIL, LLC, ) a Delaware limited liability company, ) ) *Defendant*. ) | No. 19-cv-04532 Hon. Virginia M. Kendall Magistrate Judge Jeffrey Cummings |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT REDBOX AUTOMATED RETAIL, LLC'S MOTION TO DISMISS**

**I.    INTRODUCTION**

Plaintiff, Maria Jara ("Plaintiff"), brought suit against Redbox Automated Retail, LLC ("Redbox" or "Defendant") to stop Defendant's practice of sending unauthorized automated text message advertisements to consumers' cellular telephones in violation of the Telephone Consumer Protection Act (the "TCPA"), and to obtain redress for all persons injured by Defendant's conduct. In her First Amended Class Action Complaint ("FAC") (Dkt. 17), Plaintiff asserts claims against Defendant Redbox for violation of Section 277(b)(1)(A)(iii) of the TCPA, which makes it unlawful to: (1) make advertising or telemarketing calls (or texts) to an individual's cellphone; (2) using an automatic telephone dialing system (an "ATDS"); (3) without the recipient's prior "express written consent." *See* 47 U.S.C. § 227(b)(1)(A)(iii); *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 904-05 (N.D. Ill. 2012); 47 C.F.R. § 64.1200(a)(2).[1]

---

[1] The Federal Communications Commission ("FCC") has interpreted the TCPA to "encompass[]both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls," which are generally referred to as text messages. *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (July 3, 2003).

On October 1, 2019, Defendant responded to Plaintiff's FAC by filing its Motion to Dismiss. (Dkt. 19) ("MTD"). Critically, Defendant does not dispute that the subject text messages constituted advertisements or telemarketing messages, nor does Defendant contend that it obtained Plaintiff's prior express written consent to send her such messages. Rather, Defendant argues only that Plaintiff fails to sufficiently allege that Defendant used an ATDS to send the subject messages, characterizing her allegations in this regard as "conclusory." (*See* MTD at 4–8.) Then, presumably recognizing that Plaintiff has pled a number of detailed facts concerning the functionality of its dialing technology – going above and beyond what Rule 8 requires – Defendant hedges by arguing that these factual allegations somehow support an inference that its technology does *not* fit within the definition of ATDS. (*Id.* at 7–8.) Each of these "no ATDS" arguments is completely without merit.

Defendant's first argument is nothing more than an exercise in semantics that ignores the plain language of Plaintiff's detailed, factual allegations that render it more than plausible that Defendant's equipment had the capacity to *both* "dial random or sequential numbers, *or* . . . lists of telephone numbers[.]" (1st Amend. Compl., Dkt. 17, at ¶ 21.) Importantly, Defendant's claim that Plaintiff relies on a "defunct" definition of an ATDS is contrary to the actual state of the law. Defendant's back-up argument regarding Plaintiff's factual allegations fares even worse. According to Defendant, the generic non-personalized messages that Plaintiff received somehow evidence that they were "targeted" such that they could not have been "sent using a random or sequential number generator." (MTD at 7.) Defendant has it exactly backwards. It is well established that the impersonal, pro-forma content of a text message is generally a strong indicia of the use of an ATDS, and indeed numerous decisions from *this* District have found identical allegations of generic impersonal text messages sent through a short-code more than sufficient to

2

establish the use of an ATDS at the pleading stage. Moreover, Defendant entirely fails to explain how anything about the content of these particular messages suggests the lack of the requisite technical "capacity" of the system that sent them such that this Court should deviate from the well-established body of law on this issue. For these reasons, and those stated below, Plaintiff respectfully requests that Defendant's Motion to Dismiss be denied in its entirety.

## II.  BACKGROUND

Defendant Redbox is a provider of national video rental services. (FAC at ¶ 8.) In an effort to promote its business, Redbox sent text message advertisements to cell phones of individuals across the country who it hoped were potential customers. (*Id.* at ¶ 13.) However, Defendant failed to implement proper procedures to confirm that the individuals' telephone numbers of whom it was sending such automated messages were actually Redbox customers for whom Defendant had valid consent. (*Id.* at ¶ 14.) Specifically, on at least three occasions between November 2018 and June 2019, Plaintiff unexpectedly received text messages advertisements from Defendant. (*Id.* at ¶¶ 15–17.) Each of the text message advertisements Plaintiff received were generic and non-personalized containing promotional offers and/or advertising Defendant's video selection. (*Id.*) Further, all of the text messages were sent from the SMS short-code, "727272," which is an abbreviated telephone number operated by Defendant specifically for the purpose of sending text messages *en masse*. (*Id.* at ¶¶ 15–17, 19, 21.) Critically, Plaintiff never provided her written consent to receive any text message advertisements from Defendant. (*Id.* at ¶ 23.)

## III.  LEGAL STANDARD

To state a viable claim, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the. . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007) (internal citations and quotation marks omitted). "[N]otice pleading remains the standard" under the Federal Rules, and heightened fact pleading is not required to state a claim. *Bausch v. Stryker Corp.*, 630 F.3d 546, 559 (7th Cir. 2010).

Where a defendant moves to dismiss a plaintiff's complaint under Federal Rule 12(b)(6), the motion does not test the merits of the plaintiff's claims; rather it "tests only the legal sufficiency of the complaint." *Hanley v. Green Tree Serv., LLC*, 934 F. Supp. 2d 997, 980 (N.D. Ill. 2013) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)). Thus, when reviewing a Rule 12(b)(6) motion to dismiss, the court must "construe all allegations and any reasonable inferences in the light most favorable to the plaintiff." *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 724 (7th Cir. 2014) *cert. denied*, 135 S. Ct. 688 (2014). Furthermore, all factual allegations made in the complaint should be accepted as true. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir. 2012). A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where the complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausible give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679. In short, a complaint should not be dismissed as long as the plaintiff alleges enough "by way of factual content to 'nudg[e]' his claim . . . across the line from conceivable to plausible. "*McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011) (first alteration in original) (quoting *Iqbal*, 556 U.S. at 683) (internal quotation marks omitted).

4

IV. **ARGUMENT**

    A. **Plaintiff's ATDS Allegations Plainly Comport With The TCPA's Statutory Language.**

After an exhaustive overview of the history of TCPA litigation, and without even attempting to argue that Plaintiff consented to receive the messages in question, Defendant focuses entirely on Plaintiff's allegations on the ATDS element of the statute. Specifically, Defendant argues that Plaintiff fails to adequately allege that Defendant sent the subject messages using "a device with the 'capacity . . . to store of produce telephone numbers to be called, using a random or sequential number generator.'" (MTD at 6) (citing *Pinkus v. Sirius XM Radio, Inc.*, 319 F.3d 927, 939 (N.D. Ill. 2018)). The argument is nonsense. Plaintiff's Amended Complaint specifically alleges that Defendant's text messaging system had these very features, including that "the hardware and software used by Defendant . . . have the capacity to store, produce, and dial random or sequential numbers" and further that "indeed, Defendant actually transmitted the text messages at issue in this case . . . with hardware and software that stored, produced and dialed random or sequential numbers[.]" (FAC at ¶ 21.)

Largely ignoring these allegations, Defendant attempts to raise what it likely figures is a clever semantic argument that Plaintiff's *further* allegations regarding the ability of Defendant's text message system to dial "'lists of telephone numbers' . . . *suggests* that the equipment allegedly used to send texts to Plaintiff does not meet the applicable definition of an ATDS." (MTD at 7) (emphasis added). However, the plain language of Plaintiff's Amended Complaint makes it clear that Plaintiff alleges that Defendant's system has the capacity to *both* "produce, and dial random or sequential numbers" <u>*or*</u> dial "lists of telephone numbers[.]" (FAC at ¶ 21.) Defendant fails to provide any explanation for why Plaintiff's *further* description that Defendant's system also has the capacity to dial lists of numbers in any way negates or contradicts her allegations that this

5

technology nonetheless also has the capacity to "produce, and dial random or sequential numbers" (FAC at ¶ 21), and cites to no legal authority for the proposition that dialing from lists of numbers and producing and dialing random or sequential numbers are somehow mutually exclusive functions in terms of the ATDS analysis. Any technology that has the capacity to produce and dial random or sequential numbers is indisputably an ATDS, and it makes no difference whether that technology can do other things as well.

Nor can Defendant claim that "[w]ithout more, [plaintiff's] allegations are too vague to provide notice to defendant[s] of the countours of his . . . claim." (MTD at 7) (citing *Brooks v. Ross*, 578 F.3d 574, 581–82 (7th Cir. 2009)). Unlike *Brooks*, where the court ultimately dismissed the case because the plaintiff "failed to ground his legal conclusions in a sufficiently plausible factual basis[,]" as explained in further detail in Section IV.B below, Plaintiff has pled numerous facts that courts in this District have consistently found to be sufficient on their own to allege the use of an ATDS.

Critically, even looking at the merits of Defendant's argument and ignoring the turn of semantics, it still fails to hold water. While Defendant argues that Plaintiff relies on "defunct FCC rules" by alleging that a system that can dial lists of telephone numbers constitutes an ATDS (MTD at 7), Defendant not only fails to cite to *any* binding caselaw, but it also completely disregards the Ninth Circuit's well-reasoned and extensive opinion on the issue. Indeed, in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018), the Ninth Circuit "conclude[d] that the statutory definition of ATDS includes a device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator." 904 F.3d at 1043. Indeed, given that there are currently appeals pending to both the Seventh Circuit *and* to the United States Supreme Court (*see Facebook, Inc. v. Duguid*, Sup. Ct. No. 19-511 (Cert. pet. filed

Oct. 21, 2019)) regarding the definition of an ATDS – including the very *Gadelhak v. AT&T Servs.*, No. 17-cv-01559, 2019 WL 1429346 (N.D. Ill. Mar. 29, 2019) case that Defendant cites (MTD at 5) – and the possibility that the Seventh Circuit may very well adopt the Ninth Circuit's definition, Plaintiff would have been remiss not to plead all factual allegations possible regarding the full capacity of Defendant's system.

Thus, Plaintiff has specifically alleged that Defendant's text messaging system had the requisite capacity to constitute an ATDS under *both* the authority cited by Defendant and other well-reasoned decisions of other courts that have considered the issue. This is not a close case. The Complaint adequately alleges the use of an ATDS, and the Motion should be denied.

> **B.** **Plaintiff's Amended Complaint Alleges Numerous Facts That Courts In This District Have Found Sufficient To Establish At The Pleading Stage That An ATDS Was Used.**

Not only does Defendant attempt to avoid Plaintiff's allegations regarding the technical capacity of its system to "produce, and dial random or sequential numbers" (FAC at ¶ 21), but it also largely ignores Plaintiff's numerous other factual allegations that an ATDS was utilized. As numerous courts have found, a plaintiff can establish the ATDS element of her TCPA claim by alleging "the circumstances of a call or message contributing to h[er] belief it was . . . delivered via an ATDS." *Sojka v. DirectBuy, Inc.*, 35 F. Supp. 3d 996, 1002 (N.D. Ill. 2014); *Izsak v. Draftkings, Inc.*, 191 F. Supp. 3d 900, 904 (N.D. Ill. 2016); *Johansen v. Vivant, Inc.*, No. 12-cv-7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012).

Here, Plaintiff alleges Defendant utilized a dedicated "short code" to send the text messages at issue "*en masse*." (FAC at ¶¶ 15–17, 21.) In *Serban v. Cargurus* the court found that the same allegations that the defendant used a particular "SMS short code [which] allowed [the defendant] to contact her and other members of the putative class via an ATDS" and to send

7

"thousands . . . of text messages similar to the one that [the plaintiff] received" were sufficient to "suggest an ATDS was used to send the text message[.]" *Serban v. Cargurus*, No. 16-cv-2531, 2016 WL 4709077, at *4 (N.D. Ill. Sept. 8, 2016). Further, Plaintiff also alleges facts about the content and nature of the unauthorized messages sent that support a finding that Defendant utilized an ATDS. Specifically, the text messages she received from Defendant were "generic" advertisements sent for the purpose of promoting and marketing Defendant's goods and services. (FAC at ¶¶ 15–18, 22.) In *Zeidel v. National Gas & Electric, LLC*, 18-cv-06792, 2019 WL 2161546 (N.D. Ill. May 17, 2019), the court denied a motion to dismiss brought on similar grounds, explaining that alleging information about "the generic, promotional content of the calls, which marketed [defendant]'s discounted services" was supporting evidence that an ATDS was used. *Zeidel*, 2019 WL 2161546, at *3 (N.D. Ill. May 16, 2019) (citing *Serban*, 2016 WL 4709077, at *3–4 (finding allegations of "generic, promotional content" supportive of an inference of the use of an ATDS)). The text messages received by Plaintiff were not personalized in any manner and some of them contained automated instructional commands (FAC at ¶¶ 15–17; *see also id.* ¶ 17 text message containing "txtSTOP2stop" automated instructional command), thus plausibly suggesting that they were mass marketing advertisements sent by Defendant in an automatic fashion. *See, e.g., Abe v. Hyundai Motor America, Inc.*, No. 19-cv-699, ECF No. 30 at 8 (C.D. Cal. Aug. 27, 2019) ("Abe has alleged facts sufficient to state a plausible claim that Hyundai used an ATDS to send the text messages at issue. Abe alleged that the inclusion of automated instructions 'was clear indicia of Defendant's use of an 'automatic telephone dialing system' in the transmission of the message'").

Nor is Defendant's argument that the text messages were not sent "random[ly] or sequential[ly]" because they were "plainly intended for a Redbox user" persuasive. (MTD at 10.)

Indeed, the court in *Cargurus* dealt with a *far* more personalized text message that referenced a particular vehicle listing that was sent to the plaintiff's cellular telephone. 2016 WL 4709077, at *1. Nonetheless, the court found that Plaintiff's allegations were sufficient to allege the use of an ATDS. Indeed, other courts have even found that text messages referencing specific recipients by *name* could have been sent *en masse* with such information "automatically populate[d]." *Gould v. Farmers Insurance Exchange*, 288 F. Supp. 3d 963, 968 (E.D. Mo. 2018); *see, e.g., Abe*, No. 19-cv-699-JVS-ADSx, ECF No. 30 at 8 ("Hyundai's reliance on specific details of the exchange with Abe is irrelevant. Abe's allegation that the technology Hyundai used may automate 'even the aspects of the messages that appear personalized,' supports an inference that the messages were sent using an ATDS") (citing *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1151 (9th Cir. 2019)). Finally, Defendant provides no factual support for its conclusion that Plaintiff received the messages in error and that they "were clearly targeted toward another recipient" (MTD at 7), and there is nothing about the content of the messages that suggests who the intended recipient might have been. Simply put: Defendant's Motion is without merit.

What Defendant really wants to do is turn the TCPA into a toothless tiger. Courts in this District have routinely found that "in TCPA cases," it is "virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used for a communication[.]" *Torres v. Nat'l Enterprise Sys., Inc.*, No. 12-cv-2267, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012); *Izsak*, 191 F. Supp. 3d at 904 ("a TCPA plaintiff should not be expected to plead details regarding the technical functionality of the alleged ATDS"). Thus, if Plaintiff's ATDS-related allegations in this case are insufficient to state a claim, as Defendant asks the Court to hold, then it is unclear how any TCPA plaintiff could state a claim for violation of this important

consumer protection statute at the pleadings stage, without the benefit of reasonable discovery. This Court need not go along.

Rather, this Court should adopt the reasoning of the numerous courts in this District that have recently found the same allegations made here by Plaintiff regarding the capacity of the dialing technology to "store, produce, and dial random or sequential numbers" to *alone* be sufficient at the pleading stage. FAC at ¶ 21; *see Yates v. Checkers Drive-In Restaurants, Inc.*, No. 17-cv-9210, 2019 WL 1437906, at *2 (N.D. Ill. Apr. 1, 2019) (finding allegations that the defendant's equipment "has 'the capacity to store, produce, and dial random and sequential numbers . . . . provide sufficient basis to conclude that the existence of an [ATDS] has been adequately alleged at this preliminary stage in the proceedings"); *see also Czerniak v. Servis One, Inc.*, No. 15-cv-06473, 2017 WL 1196886, at *3 (N.D. Ill. Mar. 31, 2017); *Torres*, 2013 WL 3245520, at *3; *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1010; (N.D. Ill. 2010). Here, Plaintiff's allegations go far beyond just pleading the technical capacity of Defendant's text message system, and provide additional detailed facts that are more than sufficient to plausibly establish the use of an ATDS under Rule 8.

The Complaint adequately alleges the use of an ATDS, and the Motion should be denied.

**V.    CONCLUSION**

For the reasons set forth above, Plaintiff Maria Jara respectfully requests that the Court deny Redbox's Motion to Dismiss Plaintiff's Complaint in its entirety.

Dated: October 31, 2019                                         Respectfully submitted,

                                                                MARIA JARA, individually and on behalf of
                                                                similarly situated individuals

                                                                By: /s/ Eugene Y. Turin
                                                                     *One of Plaintiff's Attorneys*

Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: 312-893-7002
eturin@mcgpc.com


Frank S. Hedin
Hedin Hall, LLP
1395 Brickell Ave, Suite 900
Miami, Florida 33131
Tel: (305) 357-2107
fhedin@hedinhall.com

**CERTIFICATE OF SERVICE**

I, Eugene Y. Turin, an attorney, hereby certify that on October 31, 2019, I electronically filed the foregoing *Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss* with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

By: /s/ Eugene Y. Turin